**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ANDRE ELLIS, | : | |
|     Petitioner, | : | |
| | : | |
| v. | : | No. 3:14-cv-01133 (JAM) |
| | : | |
| H. QUAY, | : | |
|     Respondent. | : | |

**ORDER DISMISSING**
**PETITION FOR WRIT OF HABEAS CORPUS**

This is a case about the cost of finality. The criminal law prizes the principle of finality—that convictions and sentences must not be subject to endless challenge and review, perhaps not even if the law evolves to make a ruling that was "right" yesterday "wrong" today. And so Congress and the federal courts have taken many steps in recent years to raise procedural bars restricting the rights of prisoners to file habeas petitions or to pursue other motions for post-conviction relief.[1]

To be sure, these finality rules may laudably screen out swarms of frivolous post-conviction claims that would otherwise clog the courts, divert the resources of prosecutors, and unsettle the minds of crime victims who seek and deserve closure. But it should not be forgotten that rules of finality come at a cost—that they will inevitably ensnare at least some imprisoned defendants with claims of clear legal merit. This case may be one of them.

Petitioner Andre Ellis has filed a habeas corpus petition pursuant to 28 U.S.C. § 2241 that challenges the use of a prior juvenile adjudication to enhance his federal criminal sentence. If I were sentencing him today, it appears to me that he would have a winning claim. But petitioner

---

[1] *See, e.g.*, John H. Blume, *AEDPA: The "Hype" and the "Bite,"* 91 Cornell L. Rev. 259, 265–70 (2006) (surveying major changes).

was sentenced many years ago, he has mounted many prior challenges to his sentence, and the

law only recently has swung clearly in his favor. Far less clear is whether at this late date I am

empowered to grant relief. On balance, I conclude that I am not. Because petitioner has not

shown that his remedy under 28 U.S.C. § 2255 was altogether inadequate or ineffective to test

the legality of his detention, his petition for writ of habeas corpus under § 2241 is dismissed for

lack of jurisdiction.

## BACKGROUND

Petitioner is now confined at the Federal Correctional Institution in Danbury,

Connecticut, following his federal conviction in the District of Massachusetts. He was convicted

after trial in 2003 on charges of unlawful possession by a felon of a firearm (18 U.S.C. §

922(g)(1)) and of use of a firearm in relation to a drug trafficking crime (18 U.S.C. §

924(c)(1)(A)). Because of his prior conviction history, he was subject to enhanced sentencing

under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), which requires a 15-year

mandatory minimum prison sentence for felons who possess firearms and who have three prior

convictions for violent felonies or serious drug offenses.

The ACCA allows a juvenile adjudication to serve as a "violent felony" predicate if it

"involv[es] the use or carrying of a firearm, knife, or destructive device," and "would be

punishable by imprisonment [for a term exceeding one year] if committed by an adult." 18

U.S.C. § 924(e)(2)(B). One of the "violent felony" convictions used to increase petitioner's

sentence was a juvenile adjudication in Massachusetts for assault and battery with a dangerous

weapon. *See* Mass. Gen. Laws ch. 265, § 15A. Importantly, a conviction under the

Massachusetts statute does not require that the "dangerous weapon" involved be "a firearm,

knife, or destructive device" that would qualify the offense as a "violent felony" predicate for a sentencing enhancement under the ACCA.

After an initial appeal and remand, petitioner challenged the use of this juvenile adjudication as a "violent felony" predicate under the ACCA. He contended that the juvenile adjudication had been set aside by operation of Massachusetts law and that he had not admitted to sufficient facts to support it. *See generally United States v. Ellis*, 604 F. Supp. 2d 346 (D. Mass. 2009). Moreover, in a *pro se* sentencing brief, he contended that it was improper under *Shepard v. United States*, 544 U.S. 13 (2005), for the sentencing court to consider the allegation that he had used a firearm in the juvenile offense because the specific type of dangerous weapon he had used was not itself an element required to obtain a conviction and because—despite the fact that the charging document referenced his use of a firearm—there was no indication that he had agreed or stipulated to the fact that he had used a firearm. Def.'s Supp. Sentencing Mem. at 2–3, *United States v. Ellis*, 604 F. Supp. 2d 346 (No. 1:03-cr-10054-PBS), ECF No. 126.

The district court rejected these claims. *Ellis*, 604 F. Supp. 2d. at 347–49. According to a fragment of a sentencing transcript attached to the petition in this case, the district court concluded on the basis of a charging document and possibly some other hard-to-read document from the juvenile adjudication that there was an admission by petitioner that the dangerous weapon at issue was a handgun (Doc. #1 at 31–32), thereby qualifying the juvenile adjudication for sentence-enhancement purposes as a "violent felony" under the ACCA.[2] Absent extrinsic

---

[2] The petition includes a copy of a charging document and juvenile docket sheet from the Trial Court of Massachusetts for the juvenile adjudication stating in relevant part that on November 23, 1993, petitioner "did, by means of a dangerous weapon, handgun, assault and beat Elise Abernathy, in violation of G.L. c.265, s.15A." Doc. #1 at 28 (emphasis added). According to the charging document and docket sheet, petitioner was 15 years old at the time, and he was further charged with and convicted of unlawful possession of an unlicensed firearm. *Id.* at 28–29. The charging document states under "Other Remarks" that "[s]ubsequent to investigation and several interviews, a .32 Cal. Auto handgun was recovered and seized and it was further ascertained that the above def. is the perpetrator

documents, it does not appear that there would have been any basis for the district court to conclude that the juvenile adjudication qualified as a predicate under the ACCA, because, as noted above, the Massachusetts statute at issue—assault and battery with a dangerous weapon—does not restrict the term "dangerous weapon" only to a firearm, knife, or destructive device. *See United States v. Hart*, 674 F.3d 33, 42–43 (1st Cir. 2012) (describing range of objects that may qualify as a "dangerous weapon" under the Massachusetts statute).

On appeal, the First Circuit affirmed, and the Supreme Court denied certiorari. *See United States v. Ellis*, 619 F.3d 72, 75 (1st Cir. 2010) (*per curiam*), *cert. denied*, 131 S. Ct. 1623 (2011). The sole issue presented by petitioner's appeal to the First Circuit was whether his juvenile adjudication was set aside by operation of Massachusetts law. *See* Appellant's Br. at 1, *United States v. Ellis*, 619 F.3d 72 (No. 09–1485), ECF No. 00116020430; *see also Ellis v. United States*, 2012 WL 463823, at *1 (D. Mass. 2012) (quoting petitioner's appellate brief). It does not appear that petitioner pursued his *pro se* claim under *Shepard* that it was improper for the district court to consider the charging document—or any document beyond the statute of conviction— to establish that the dangerous weapon at issue in the juvenile adjudication was a firearm, as opposed to some other kind of dangerous weapon that would not have qualified the juvenile adjudication as a "violent felony" under the ACCA.

Petitioner thereafter filed a motion for post-conviction relief under 28 U.S.C. § 2255, contending not only that his counsel had been ineffective in failing to argue from the outset that his juvenile adjudication had been set aside by operation of Massachusetts law but also that the elements of his juvenile adjudication did not suffice to qualify it as a "violent felony" for purposes of sentencing under the ACCA for lack of proof that the assault underlying his juvenile

of the described incident." *Id.* at 28.

adjudication was committed intentionally rather than recklessly. *See id.* at *3–5.

The district court issued a ruling in 2012 rejecting petitioner's claims. *Ibid.* There is no indication from the petition or the district court's decision that petitioner renewed his *Shepard* claim that it was improper to have considered the charging document—or any document beyond the statute of conviction—to establish that the type of dangerous weapon involved was a firearm.

In 2013, the Supreme Court issued a decision in *Descamps v. United States*, 570 U.S. ___, 133 S. Ct. 2276 (2013), to clarify the analytic framework for evaluating whether a prior conviction may qualify as a "violent felony" under the ACCA. The Supreme Court made clear that, unlike the statute at issue in *Shepard*, when a defendant has been previously convicted under an "indivisible" statute (*i.e.*, a statute that does not list potential offense elements in the alternative, such as burglary of a home *or* of a dwelling), a sentencing court must use a pure "categorical approach" and rely solely upon the formal elements of the prior offense without consulting charging documents or similar underlying papers to determine the nature of the offense of conviction. *Id.* at 2285–86.

In light of *Descamps*, petitioner sought leave from the First Circuit for certification to file a second-or-successive § 2255 motion. *See* 28 U.S.C. § 2255(h). In essence, he contended that the categorical analysis applied by *Descamps* for determining whether an offense qualified as a "violent felony" under the ACCA precluded consideration of the charging document from his juvenile adjudication to ascertain that the type of dangerous weapon at issue was a firearm. The First Circuit, however, did not reach the merits of petitioner's claim; instead, it denied petitioner's application for certification, concluding that *Descamps* did not announce a new rule of constitutional law, as required under 28 U.S.C. § 2255(h) to allow for certification of a

second-or-successive motion for post-conviction relief. *See* Doc. #1 at 17.

Having lost his two bids for § 2255 relief in the District of Massachusetts and the First

Circuit, petitioner now seeks relief under § 2241 here in the District of Connecticut where he is

confined. Once again, he relies on the Supreme Court's decision in *Descamps* to challenge the

basis for using his juvenile adjudication to enhance his sentence under the Armed Career

Criminal Act.

**DISCUSSION**

A prisoner who is unhappy in the custody of the Bureau of Prisons faces a somewhat

confusing choice of statutes by which to seek a court's relief. On the one hand, if the prisoner

seeks to challenge the *imposition* of or validity of his conviction or his sentence, the prisoner

must file a motion for post-conviction relief under 28 U.S.C. § 2255. On the other hand, if the

prisoner seeks to challenge the *execution* of his sentence, or the manner in which it is being

carried out, the prisoner should file a petition for habeas corpus under 28 U.S.C. § 2241. *See*

*Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006); *Adams v. United States*, 372 F.3d 132, 134–35

(2d Cir. 2004).

But these two forms of relief—a motion under § 2255 or a petition under § 2241—are not

mutually exclusive. Congress by statute has enacted a savings clause to allow a prisoner to file a

§ 2241 habeas corpus petition to seek § 2255-type relief if "the remedy by motion [pursuant to §

2255] is *inadequate or ineffective* to test the legality of [a prisoner's] detention." 28 U.S.C. §

2255(e) (emphasis added).

Congress has left it to the courts to decide when a motion for § 2255 relief would be

"inadequate or ineffective" to allow for a petition under § 2241. A complication is that § 2255

6

comes with built-in "gatekeeping" limitations that are designed to prevent prisoners from filing

untimely and endless motions for post-conviction relief. Thus, for example, a prisoner ordinarily

must seek any § 2255 relief within one year of his conviction becoming final, *see* 28 U.S.C. §

2255(f), and a prisoner ordinarily may not file a second or successive motion for § 2255 relief

unless in reliance on newly discovered evidence that the petitioner was not guilty or a new rule

of constitutional law that the Supreme Court has made retroactive to cases on collateral review,

*see* 28 U.S.C. § 2255(h).

So then, does the fact that a § 2255 remedy is unavailable to a prisoner because of §

2255's gatekeeping provisions mean that a § 2255 remedy is "inadequate or ineffective" (thereby

allowing a prisoner to seek § 2241 habeas corpus relief)? Understandably, the Second Circuit has

repeatedly said no, because the gatekeeping provisions of § 2255 would essentially be

meaningless if invariably subject to circumvention by means of resort to a § 2241 petition. *See,

e.g.*, *Poindexter v. Nash*, 333 F.3d 372, 378 (2d Cir. 2003); *Love v. Menifee*, 333 F.3d 69, 73 (2d

Cir. 2003). Thus, the Second Circuit has ruled "that § 2255 is *not* inadequate or ineffective

simply because the prisoner cannot meet [§ 2255's] gate-keeping requirements, so long as the

claim the prisoner seeks to raise was previously available to him on direct appeal or in a prior §

2255 petition." *Adams*, 372 F.3d at 135.

Instead, only in "very limited circumstances"—such as if "'the failure to allow for

collateral review would raise serious constitutional questions'"—may a prisoner pursue § 2255-

type claims by means of a § 2241 habeas corpus petition. *See Poindexter*, 333 F.3d at 378

(quoting *Triestman v. United States*, 124 F.3d 361, 377 (2d Cir. 1997)). One such limited

circumstance, says the Second Circuit, is if a petitioner raises a claim of actual innocence that

7

could not have been proved at an earlier time. *Ibid*; *see also Triestman*, 124 F.3d at 363 (noting

that "serious constitutional questions would arise if a person who can prove his actual innocence

on the existing record—and who could not have effectively raised his claim of innocence at an

earlier time—had no access to judicial review").

Petitioner here has raised a troubling claim. As best as I can tell, if he were sentenced

today, he would likely have a winning argument under *Descamps* that his juvenile adjudication

may not count as a "violent felony" for purposes of the ACCA, because his juvenile adjudication

was for violation of an indivisible statute, and a court could not rely on the charging document or

other extrinsic evidence to determine that the "dangerous weapon" involved was actually a

firearm. This is exactly how the Eighth Circuit has recently ruled. *See United States v. Bankhead*,

746 F.3d 323, 325–27 (8th Cir. 2014) (upholding on direct appeal a similar challenge to the use

under the ACCA of a juvenile conviction involving a similar indivisible statute proscribing use

of a "dangerous weapon"). If petitioner's claim were sustained, he would be released from

imprisonment forthwith rather than facing a projected release date more than five years from

now in June 2020. *See* Department of Justice, Bureau of Prisons, Inmate Locator (projected

release date for Andre Ellis, #24637-038), *available at* http://www.bop.gov/inmateloc/.

My role, however, is not to re-sentence petitioner but to determine if, in light of his prior

litigation history, he may pursue relief at all at this late date by means of a habeas corpus

petition. I conclude that he may not. To begin with, it seems clear that relief by motion under §

2255 is no longer available. As the First Circuit has already (and correctly) ruled, *Descamps* does

not announce a rule of constitutional law, much less a rule of constitutional law that the Supreme

Court has made retroactive to cases on collateral review. *See* Doc. #1 at 17; *see also Ezell v.*

8

*United States*, ___ F.3d ___, 2015 WL 294306, at \*3–4 (9th Cir. 2015); *Abney v. English*, 2014 WL 6978878, at \*4 (N.D. Fla. 2014) (dismissing § 2241 petition on ground that *Descamps* is not retroactive to cases on collateral review; collecting cases).

Of course, as discussed above, the fact that § 2255 relief is unavailable solely by reason of one of § 2255's gatekeeping provisions does not mean that the remedy under § 2255 is "inadequate or ineffective," at least as the Second Circuit has restrictively interpreted those terms. *See Adams*, 372 F.3d at 135. Nor would foreclosing petitioner from seeking § 2241 relief raise serious constitutional questions that might warrant review. *See Poindexter*, 333 F.3d at 378. Petitioner was not previously barred from arguing that the charging document should not be considered. To the contrary, he did raise such a claim before the district court when he was resentenced in 2009 but then failed to pursue the claim on direct appeal. And he did not pursue the claim anew in his first § 2255 motion before the Massachusetts district court. Moreover, he has not pointed to case law in the First Circuit that would have foreclosed his claim prior to the Supreme Court's ruling in *Descamps.*

Accordingly, although a § 2255 remedy may no longer be available under the gatekeeping rules, it cannot be said that any possible remedy under § 2255 was "inadequate or ineffective" in the first instance. *See Adams*, 372 F.3d at 135 (§ 2255 remedy not "inadequate or ineffective" if "the claim the prisoner seeks to raise was previously available to him on direct appeal or in a prior § 2255 petition"); *see also Samak v. Warden, FCC Coleman-Medium*, 766 F.3d 1271, 1275 (11th Cir. 2014) (*per curiam*) (§ 2255 remedy not "inadequate or ineffective" absent showing that "at the time of his sentencing or any other relevant time, circuit precedent squarely foreclosed his claim").

Petitioner argues that he is actually innocent of the conduct underlying his juvenile

adjudication, and therefore that he meets the actual innocence exception that the Second Circuit

has recognized to allow a § 2241 claim. *See Poindexter*, 333 F.3d at 380–82 (discussing cases

recognizing actual-innocence-of-sentencing-predicate-conviction claims but declining to apply

actual innocence exception to claim of pure legal error in calculating number of predicate

convictions as distinct from factual or legal innocence of predicate offenses); *Spence v.*

*Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 172 (2d Cir. 2000) ("Where a

petitioner shows by clear and convincing proof that he is actually innocent of the conduct on

which his sentence is based, the incarceration is fundamentally unjust and the miscarriage of

justice exception to the procedural default bar applies.").

Petitioner bases his claim of actual innocence on a two-page affidavit of one Deon R.

Smith, a former classmate of petitioner's who avers in substance that he was present at the time

of the assault on the victim and that it was another person who shot the victim. Doc. #1 at 41.

The affidavit is spare in details and lacks any indication why petitioner has not called upon or

relied on the testimony of Smith at any time in the past 20 years since the juvenile incident took

place. Moreover, the caption of the affidavit reflects that it was signed last May for what appears

to be purposes of a juvenile court proceeding in Massachusetts. In view of the requirement that

actual innocence be shown by a demanding standard of clear and convincing evidence and that

petitioner seems to be seeking relief in the first instance from the juvenile court in

Massachusetts, I cannot conclude that petitioner's claim of actual innocence is plausible grounds

for relief at this time.[3]

---

[3] By means of a supplemental filing (Doc. #4) and in light of recent precedent from the Second Circuit restrictively interpreting the requirement of the ACCA that predicate convictions have been committed "on

10

Still, even if petitioner cannot prove he is actually innocent, it cannot sit well that in light of evolving law his sentence may well exceed what should have been imposed. At issue are age-old concerns about how to balance the interests of finality with the interests of correcting a wrongful sentence. On the one hand, it may be said that "[a]fter a case has passed the stage of a first § 2255 proceeding, the right to error correction is narrowly limited by principles of policy that reside in the finality of judgment neighborhood of the law—principles which further critically important interests." *Gilbert v. United States*, 640 F.3d 1293, 1324 (11th Cir. 2011) (*en banc*); *see also* Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. Chi. L. Rev. 142, 142 (1972) ("My thesis is that, with a few important exceptions, convictions should be subject to collateral attack only when the prisoner supplements his constitutional plea with a colorable claim of innocence.").

On the other hand, it may be said that finality concerns should apply with lesser force in the context of sentencing errors—as distinct from trial or conviction errors—and when years upon years of a person's life are at stake. As Professor Sarah French Russell has argued, "[c]ourts often deny relief even in the face of an undisputed sentencing error that is causing someone to spend many extra years in prison," but "[c]oncerns about finality are much less pressing when a court reconsiders the length of a sentence rather than the validity of a conviction," because "correcting a defendant's sentence in a noncapital case uses considerably less time and resources than retrying a case," and "reducing a sentence of imprisonment to its lawful length actually saves resources that would have otherwise been spent on unnecessary

---

occasions different from one another," *see United States v. Dantzler*, 771 F.3d 137 (2d Cir. 2014), petitioner raises yet a new challenge, now to the use of one of one or more of his *adult* convictions for sentence-enhancement purposes under the ACCA. This argument fails for the same reasons (among other grounds) as his *Descamps* argument—that petitioner has failed to show that his remedy under § 2255 in the first instance was inadequate or ineffective to allow him to raise this claim.

incarceration." Sarah French Russell, *Reluctance to Resentence: Courts, Congress, and Collateral Review*, 91 N.C. L. Rev. 79, 82–83 (2012). *But see generally* Ryan W. Scott, *In Defense of the Finality of Criminal Sentences on Collateral Review*, 4 Wake Forest J. L. & Pol'y 179 (2014); *see also* Andrew Chongseh Kim, *Beyond Finality: How Making Criminal Judgments Less Final Can Further the "Interests of Finality,"* 2013 Utah L. Rev. 561, 564 (2013) (contending that "restrictions on review (1) can produce net waste of state resources by increasing wrongful incarceration costs, (2) will rarely affect the behavior of defense counsel, and (3) can actually make defendants less willing to obey the law in the future by making the justice system appear procedurally unfair").

I do not take sides in this important policy debate. The law as I understand it requires me to dismiss the habeas corpus petition for lack of a showing that a remedy under § 2255 was inadequate or ineffective.

### CONCLUSION

The petition is DISMISSED for lack of jurisdiction. Petitioner's motions for bond (Doc. #3) and to supplement his petition (Doc. #4) are DENIED as moot. The Clerk is directed to enter judgment and close this case.

**SO ORDERED** this 18th day of February, 2015 at Bridgeport, Connecticut.

  /s/ **Jeffrey Alker Meyer**
Jeffrey Alker Meyer
United States District Judge